**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph George Heller,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-21-00857-PHX-GMS<br><br>**ORDER** |

Plaintiff challenges the denial of his application for disability insurance benefits under Title II of the Social Security Act. For the following reasons, the ALJ's decision is affirmed.

**I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial, gainful work, he is not disabled. *Id*. If he is not so engaged, the analysis proceeds to step two. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If he does not, he is not disabled. *Id*. If he does, the analysis proceeds to step three. *Id*. At step three, the ALJ considers whether the

claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where he determines whether the claimant is still capable of performing his past relevant work. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. *Id*. If he cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on his RFC, age, education, and work experience. § 404.1520(a)(4)(v). If the claimant cannot, he is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**II.   PROCEDURAL HISTORY**

Plaintiff filed an application for Title II disability benefits on May 17, 2019 alleging disability beginning April 1, 2019. (AR. at 228.) The agency denied Plaintiff's claim at the initial and reconsideration phases of administrative review (AR. at 135-43, 145-53), and Plaintiff timely requested a hearing before an ALJ (AR. at 154-55). ALJ Paul Isherwood presided over a telephonic hearing on November 30, 2020, at which Plaintiff and vocational expert ("VE") Sugi Komarov testified. (AR. at 46-73.) ALJ Isherwood found Plaintiff not

disabled in a written decision dated January 8, 2021. (AR. at 13-28.) Plaintiff appealed (AR. at 219-22), and the Social Security Appeals Council denied review in a letter dated March 12, 2021 (AR. at 1-3). Plaintiff filed the complaint initiating this civil action on May 13, 2021. (Doc. 1.)

In the unfavorable decision, the ALJ found Plaintiff had not engaged in disqualifying substantial, gainful work activity, and that he suffered from severe impairments including degenerative disc disease and osteoarthritis of the knees. (AR. at 16-18.) While Plaintiff received treatment for anxiety, depression, and posttraumatic stress disorder, the ALJ concluded these impairments were not severe. (AR. at 16-18.) The ALJ found Plaintiff's impairments did not meet and were not medically equivalent to any listed impairment at step three, and that Plaintiff retained the ability to perform "the full range of light work" without additional limitations. (AR. at 18-19.) The ALJ found Plaintiff capable of performing past relevant work at step four. (AR. at 22.)

### III. DISCUSSION

Plaintiff presents four issues on appeal: (1) whether the ALJ erred by failing to account in the RFC for the "mild" limitations he assigned using the psychiatric review technique ("PRT") at step two; (2) whether the ALJ erred by failing to evaluate the functional impact of Plaintiff's obesity; (3) whether the ALJ cited sufficient reasons for rejecting Plaintiff's need for a cane; and (4) whether the Commissioner's for-cause removal protection under the Act violates the U.S. Constitution and necessitates remand. (Pl. Br. at 1-2.) The Court finds reversible error on issue (2) and remands for further proceedings.[1]

**A. The ALJ Did Not Err by Omitting Mental Health Limitations from the RFC.**

At step two, the ALJ must evaluate the severity of medically-determinable mental impairments using a "special technique" whereby he considers all the relevant evidence and "rate[s] the degree of [the claimant's] functional limitation" in "four broad functional areas": understanding, remembering, and applying information; interacting with others;

---

[1] Plaintiff makes no argument that remand for payment of benefits is warranted here.

concentrating, persisting, or maintaining pace; and adapting or managing himself. 20 C.F.R. §§ 404.1520a(a), (b)(2), (c)(3). These categories are known as the "Paragraph B Criteria." § Pt. 404, Subpt. P, App. 1, 12.00(E). To apply the technique, the ALJ must "consider all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [his] functioning may be affected by factors . . .[,]" and then employ a five-point scale, ranging from no limitation to extreme limitation, reflecting the severity of limitation in each category. §§ 404.1520a(c)(1), (c)(4). When the ALJ rates all four degrees of limitation as no greater than "none" or "mild," he "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [his] ability to do basic work activities[.]" § 404.1520a(d)(1). Importantly, however, the Paragraph B limitations "are not an RFC assessment[,]" which is more detailed. Social Security Ruling ("SSR") 96-8P, 1996 WL 374184 at *4 (S.S.A. July 2, 1996). In assessing RFC, the ALJ must consider "all the relevant evidence in [the claimant's] case record[,]" 20 C.F.R. § 404.1545(a)(1), and issue "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8P, 1996 WL 374184 at *3.

In the decision, the ALJ concluded "[Plaintiff's] . . . anxiety, depression and posttraumatic stress disorder (PTSD), considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (AR. at 16.) In reaching this conclusion, the ALJ considered the evidence of Plaintiff's mental health impairments using the "Paragraph B" criteria, and concluded Plaintiff suffers, at most, only mild limitation in each of the four categories. (AR. at 16-18.) The ALJ included no corresponding limitations in the RFC. (AR. at 19.) Plaintiff argues the ALJ erred by failing to account for these limitations in the RFC. (Pl. Br. at 4-12.)

The ALJ was not *required* to account for the mild limitations he assigned using the psychiatric review technique; he must only *consider* Plaintiff's non-severe mental

impairments and any mild limitations he assigned when determining the RFC. *See Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021-22 (D. Ariz. 2019) (holding that the ALJ errs when assigning mild limitations using the PRT, but then failing to consider those limitations when evaluating the RFC); *Sylvester H. v. Kijakazi*, No. 5:20-CV-02503-SP, 2022 WL 4466717, at *7-8 (C.D. Cal. Sept. 26, 2022) (collecting cases). "[T]he adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quotations and citations omitted). The ALJ's hypothetical questions to the VE must also include "all of the claimant's functional limitations, both physical and mental supported by the record." *Thomas*, 278 F.3d at 956 (quotations and citations omitted); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001); ("It is[ ]proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record.")

Here, at the RFC phase, the ALJ noted in his discussion of the psychological examiner's report that Plaintiff's "mood and affect were reported as normal, average, pleasant, positive and euthymic in his treatment records[.]" (AR. at 21.) The ALJ cited over 30 treatment visits in support. (AR. at 21.) He also stated that Plaintiff's "mental status examinations generally show normal concentration and attention[,]" and that Plaintiff reported his concentration had improved. (AR. at 21.) Elsewhere, without citing to the record, the ALJ asserted that Plaintiff's "mental status appears mostly normal[,]" and that his "psychotropic medications were helping with no side effects." (AR. at 21.) Referring back to the PRT, the ALJ also stated he "ha[d] determined that the [Plaintiff] ha[d] mild limitations in all four of the broad areas of mental functioning, which is consistent with the overall objective medical evidence and takes the [Plaintiff's] Function Report . . . into consideration." (AR. at 21.)

Substantial evidence corroborates the ALJ's decision. Consistent with the ALJ's conclusions, Plaintiff routinely exhibited normal concentration, attention, mood, or affect, among other normal mental status findings. (AR. at 639, 644-45, 652-53, 657-58, 1011,

1020, 1035.)[2] It is clear from the decision that the ALJ considered Plaintiff's mild PRT limitations in his RFC discussion, and that the ALJ's conclusions regarding those limitations, or the lack thereof, were supported by substantial evidence. As such, the ALJ's omission of mental health limitations from the RFC does not constitute legal error.

### B. Obesity Was Not Evident From The Record, Thus No Evaluation of Obesity was Required in the RFC.

Plaintiff, who was represented by counsel, never asserted to the ALJ that his obesity was a cause of his disability, under the appendices or otherwise. "Mr. Heller alleged disability beginning April 1, 2019, due to post-traumatic stress disorder (PTSD), pre-emphysema, crushed vertebrae, anxiety, depression, knee issues, back pain, irritable bowel syndrome, sleep apnea, and chronic pain." (Doc. 16 at 3.) Thus, at least as it pertains to his assertion that he is qualified under the appendices by virtue of his obesity, he is not entitled to claim error on that basis now. *Burch v. Barnhart,* 400 F.3d 676, 684 (9th Cir. 2005), (holding that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence[.]" In any event the BMI levels that he now asserts for the first time on appeal, would not qualify him under any listing in and of themselves, nor do they suggest a severe impairment.

The only question left as it pertains to Plaintiff's obesity, then, is whether the ALJ erred in failing to consider the Plaintiff's obesity in the RFC analysis, and how that may have affected the claimant's other impairments. The touchstone of any such analysis would be the extent to which the existence of obesity would have been evident from the record with no help provided by Mr. Heller. As a general rule, it is the Plaintiff's obligation to prove his disability and to provide evidence that substantiates it. An ALJ need not evaluate evidence about conditions that the claimant does not identify as giving rise to an impairment for which there is no evidence. 20 C.F.R. § 404.1512(a) (2017) (In general, you have to prove to us that you are . . . disabled. . . . We will consider only impairment(s)

---

[2] Plaintiff presented with a "blunted" mood and affect in April 2019, but with other normal findings. (AR. at 652-53.)

you say you have or about which we receive evidence.")

But, when obesity is evident from the record, an ALJ does have the obligation to consider the obesity in an RFC on the ALJ's own initiative. In *Celaya v, Halter,* 332 F.3d 1177 (9th Cir. 2003) Celaya's symptoms included diabetes, hypertension and headaches that implicitly included obesity. She had a very high body mass index (BMI) of over 44 that exceeded the level of 40 that would categorize her as "extremely obese," and fell just short of the listing criterion for obesity that existed under the SSI regulations at the time. The Court thus found that "[t]he ALJ's exclusion of obesity from his analysis is error in that he was addressing an illiterate unrepresented claimant who very likely never knew that she *could* assert obesity as a partial basis for her disability." *Id.* at 1183. Because, in combination with Celaya's existing diabetes and hypertension, "it was clear from the record that Celaya's obesity was at least close to the listing criterion, and was a condition that could exacerbate her reported illnesses," her obesity was implicit in her diagnosis and it was error for the ALJ not to consider obesity when it considered the Plaintiff's RFC. *Id.* at 1182.

There are no such facts here, however. As stated, Heller who was represented by counsel, failed to allege that obesity impacted his ability to work (AR 135). He did not make such an assertion in any of his application materials (AR 252-259, 297-301, 323-327); in any reports submitted in support of his application (AR 263-270, 271-79, 290-92, 303-310, 312-20); his request for reconsideration after the agency initially denied his claim (AR 144); or in his request for a hearing before an ALJ (AR 154-55). Nor does he argue facts that would demonstrate that Plaintiff's obesity was or might have been a contributing factor in his disability.

In his appellate briefing, Heller does note that at the start of his hearing in this matter his lawyer did summarize the various symptoms for which Mr. Heller had received treatment at the VA since his previous application for disability. Among a number of such symptoms Mr. Heller's attorney mentioned obesity. And at the very start of the hearing, Mr. Heller's attorney did ask him:

> Q. How tall are you?
> A. Five-nine
> A. Five nine. And what's your current weight?
> A. Two twenty-six.
> Q. Two twenty-six. Okay. Have you noticed any changes in your weight—drastic changes since April 2019?
> A. I gained approximately 12, 15 pounds.
> Q. Okay. Fifteen pounds

A.R. at 54-55.

He did nothing more with that information. What he does do for the first time on appeal, is assert that when he first applied for disability benefits – apparently sometime in early 2019-- he reported a weight and height that shows a BMI of 30--which is the threshold between overweight and obesity on the BMI scale. He then asserts that because he reported gaining fifteen pounds over the next year, his height and weight as reported by him in December of 2019 would have given him a BMI of 35.1, in March of 2020 a BMI of 34, and at the hearing in November 2020 a BMI of 33. He thus asserts that the agency was on notice of his obesity, and that the ALJ was bound to consider the impact of his obesity on his physical functioning despite his failure to ever identify any records that indicate that obesity would be a possible contributor to impairments for him.

What this argument overlooks is that a BMI of 30 or higher does not of itself establish obesity. The Social Security Administration's ruling governing the evaluation of obesity sets forth requirements for accepting BMI's in general, and further sets forth the lack of direct correlation between BMIs and obesity. Although an ALJ considers a BMI in evaluating whether obesity exists, "[h]ealth care practitioners diagnose obesity based on a person's medical history, physical examinations, and body mass index (BMI)." SSR19-2(1). "Although there is often a correlation between BMI and excess body fat, this is not always the case. Someone who has a BMI of 30 or above may not have an MDI of obesity if a large percentage of the person's weight is from muscle." SSR19-2(3) (2019). If a person's BMI is within the normal range, he or she may still have obesity if his or her waist measurement is high." *Id*. Thus, the ALJ will not calculate BMI based merely on a person's

self-reported height and weight," SSR 19-2P, as Heller provides here.  Before making an obesity determination, and as an initial step in evaluating a BMI to determine whether it reflects the existence of obesity and whether it provides any potential for functional impairment, an ALJ is required to evaluate a BMI "based on the medical evidence in the case record."  "When deciding whether a person has an MDI of obesity, we consider the person's weight over time. We consider the person to have an MDI of obesity as long as his or her weight, measured waist size, or BMI shows a consistent pattern of obesity."

Plaintiff merely sets forth his BMI on his self-reported height and weight from various records and applications.  This does not make the existence of obesity evident in Mr. Heller and does not even provide an acceptable method for evaluating BMI.  Plaintiff's BMI and other ailments were not nearly as obviously related to obesity as was Celaya's (Celaya's BMI was above 44 with a diagnosis of diabetes mellitus, hypertension and headaches making her obesity diagnosis "implicit" according to the Court).  Perhaps more to the point, especially because Heller is represented, there is, on appeal, no argument that obesity is evident in the medical records. *See. e.g*. *Burch,* 400 F.3d t 678 (noting that it was error for an ALJ not to consider obesity in the RFC when it was evident from the record, the Plaintiff testified about being overweight at hearing, and her medical records discussed her obesity and recommended a medically supervised weight loss program to treat it.).

We live in a society in which many people may have a BMI above 30 but are not functionally impaired in any way by it.  The existence in the record of a medical file showing a BMI above 30 without more, does not, in and of itself, make the existence of obesity evident or create an obligation in an ALJ to account for obesity *sua sponte* in assessing the claimant's RFC.  This is especially true when a Plaintiff's claims concerning his disability do not mention obesity, and when the Plaintiff points to no medical records that would make it evident that obesity affects the claimant's ability to function.  To hold otherwise would drastically and needlessly increase the obligation of ALJs to *sua sponte* inspect case files to search for elevated BMI's (which they might have to calculate for

- 9 -

themselves) without any indication that a high BMI necessarily indicated obesity (or perhaps that a low BMI precluded it,), or that it had any effect on Plaintiff's other impairments. This is simply unworkable, and serves no purpose other than to increase the obligations of overburdened ALJ's and provide a represented Plaintiff an unmerited second bite at the apple. There was no error in these circumstances.

### C. The ALJ Did Not Err by Omitting from the RFC Plaintiff's Need for a Cane.

Under new regulations pertaining to the consideration of opinion evidence, ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). ALJs must instead articulate how persuasive they find each medical opinion by addressing the supportability and consistency of each. § 404.1520c(b)(2). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be. § 404.1520c(c)(1). "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2). In *Woods v. Kijakazi*, the Ninth Circuit held these regulations to be "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." 32 F.4th 785, 792 (9th Cir. 2022) (citations omitted). Instead of providing "clear and convincing" or "specific and legitimate" reasons to reject a given opinion, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787. Now, in considering medical opinion evidence, "[t]he agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings[.]" *Id.* at 792 (citing §§ 404.1520c(b), (b)(2)). If the ALJ relies upon a given doctor's opinion, the ALJ must incorporate the limitations that doctor assigned into the

RFC. *Van Sickle v. Astrue*, 385 F. App'x 739, 741 n.1 (9th Cir. 2010) (unpublished) (citing *Magallanes,* 881 F.2d at 756, for the proposition that "[if] the ALJ accepted the doctors' findings, the ALJ was required to include them in his RFC.") Here, the ALJ found persuasive the prior administrative medical findings of "D. Swena, M.D." and "partially persuasive" the opinion of consultative examiner Christine Joy, PA, each of whom opined Plaintiff's cane was medically necessary (AR. at 22, 105, 524), but the ALJ did not incorporate this need into the RFC. Plaintiff argues this was error.

But the ALJ independently provides reasons rejecting the medical necessity of Plaintiff's cane (AR. at 20), and the ALJ's conclusion is supported by substantial evidence. As the ALJ noted, Plaintiff often exhibited a normal gait during treatment visits (AR. at 423, 569, 837, 914), and ambulated without a cane at times (AR. at 837, 1063). Defendant is correct that the ALJ need not accept the entire opinion of a particular physician. *See Magallanes*, 881 F.2d at 753 ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence.") (quotations and citations omitted).

Even assuming the ALJ erred, however, any such error is harmless as the VE testified Plaintiff could perform the Funeral Director job even with "a cane for all ambulation." (AR. at 70-71.) Plaintiff never addresses this and does not otherwise allege any other errors in the vocational testimony. (Pl. Br. at 15-21, Reply at 3-4). Consequently, the ALJ did not err. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (explaining harmless error in Social Security disability cases).

### D. Plaintiff's Separation-of-Powers Claim Does Not Warrant Remand.

Plaintiff's separation of powers argument is without merit. The Act "provides that the Commissioner of Social Security 'may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office.'" *Kaufmann v. Kijakazi*, 32 F.4th 843, 847 (9th Cir. 2022) (citations omitted). In *Kaufmann*, the Ninth Circuit held this provision to be unconstitutional, as it infringed upon the President's power to remove executive officers. *Id*. at 847-49. The Court further held that this provision was

severable from the remaining provisions of the Act capable of "fully independent function[,]" *Id*. at 849, and that to succeed on a separation-of-powers challenge, the claimant must show how he was harmed by the unconstitutional removal provision. *Id*. at 849-50. Plaintiff has made no such showing here.

Plaintiff argues that, due to the Commissioner's supposedly unconstitutional delegation of authority to Appeals Council officers, Plaintiff "did not receive the constitutionally valid adjudication process [or determination] from SSA's Appeals Council to which he was entitled[,]" (Reply at 6.) The argument rests on the proposition that the Commissioner "had no constitutionally valid authority to delegate to these Appeals Council judges because President Biden would have fired him absent the unconstitutional statutory removal provision in this case." (Reply at 7.) But Plaintiff does not explain how the President's removal of the Commissioner before Plaintiff's Appeals Council determination would have changed the result here. *Kaufmann*, 32 F.4th at 849–50 (holding that, as here "nothing in the record suggests any link whatsoever between the removal provision and Claimant's case.") Plaintiff believes the "constitutionally invalid" Appeals Council process constitutes a separate injury unto itself, but the fact of the Commissioner's unconstitutional tenure protection does not deprive him of the authority to carry out the duties of the office, as opposed to a successful challenge under the Appointments Clause. *Kaufmann*, 32 F.4th at 849. Plaintiff has made clear his challenge does not implicate the Appointments Clause. (Reply at 5) ("This issue is not an Appointments Clause challenge . . . .") Thus, Plaintiff's argument in this respect, lacks merit. *See Kaufmann*, 32 F.4th at 849.

**IT IS THEREFORE ORDERED affirming** the January 8, 2021 decision of the Administrative Law Judge and directing the Clerk to enter final judgment consistent with this Order and to close this case.

Dated this 6th day of April, 2023.

_____
G. Murray Snow
Chief United States District Judge